## Gay v. American Trading Co.

(Decided October 10, 1919.)

Appeal from Fayette Circuit Court.

1. Contracts—Purchase and Storing of Hemp—Reimbursement.—By a contract between plaintiff and defendant under which defendant agreed to purchase hemp for plaintiff as its agent, it was stipulated that the hemp should be stored in defendant's warehouse, defendant's commission to cover all expenses of conducting the

business. The warehouse burned and defendant stored salvaged hemp in the country, paying storage, for which he seeks reimburse-ment. Held, that defendant is entitled to reimbursement for un-foreseen and extraordinary expenses necessarily incurred in caring for plaintiff's hemp.

2. Appeal and Error—Finding of Chancellor.—The rule that where upon a question of fact the proof is so conflicting as to leave the mind in doubt the decision of the chancellor will be accepted, does not apply where the error is one of law.

3. Contracts—Itemized Expense Account.—When an itemized expense account is kept for the purpose of making a charge therefor the party claiming thereunder should not be permitted to add a gross sum upon the mere statement that he knows he expended that much or more in addition to the account kept by him.

4. Appeal and Error—Approval of Master's Report.—In his report the master credited defendant with the purchase price which he paid and charged him with the value of salvaged tow in accordance with the appraisement made soon after the fire. Plaintiff claims that the charge should have been for the full value before the fire because of defendant's inability to disclose what he thereafter received from a sale of same. Held, that the appraised value not having been shown to be incorrect, and in absence of other proof of its value, the master under the circumstances adopted the most satisfactory plan and the chancellor's judgment approving same should not be disturbed.

5. Appeal and Error—Judgment—Interest.—A judgment upon an ac-counting may, under section 2220, Kentucky Statutes, include ac-crued interest upon the net amount, when correctly ascertained, due the successful party, but when a judgment for a single fixed sum, including accrued interest, is upon appeal affirmed as to part but reversed as to other items, and remanded for a new trial of still other items involved, it is reversed as to all interest in-cluded therein, since such interest was calculated upon an in-correct and reversed adjudication of the net indebtedness. Hence it was error to allow in the second judgment any interest on in-terest from the date of the first judgment. The accrued interest that may be included in a judgment upon a settlement of accounts, except as otherwise provided by law, is simple and not compound interest, calculated upon the correct indebtedness as finally ad-judged.

6. Appeal and Error—Reference to Master—Costs.—The court did not err in adjudging costs of the reference to the master against defendant, even though upon one of the items referred defendant recovered a substantial sum, since this is but a single action in which plaintiff has the only judgment carrying costs.

GEORGE C. WEBB for appellant.

E. M. WALLACE and GEORGE R. HUNT for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing upon the direct and affirming upon the cross appeal.

Upon a former appeal of this case a judgment, upon a settlement of accounts, in favor of the plaintiff, now appellee, for $6,854.40, with costs and interest, was affirmed in part and reversed in part, and the cause remanded for a trial upon a reference to the master of two complicated items asserted in appellant's counterclaim—179 Ky. 94.

These two items were: (1) $2,484.62 claimed by appellant as a balance due him on a settlement of his accounts for the year 1910, and (2) $1,042.59 on account of 1908 tow destroyed by fire of April 6, 1910.

Upon a trial of these issues, the only ones left open by the former opinion, the chancellor, approving the master's report, rejected the whole of the first and allowed $924.41 of the second.

Appellant, who was defendant below, on this appeal complains of the rejection of his claim for $1,125.00 for storage, and $537.10 for hauling, in connection with the 1910 crop of hemp, and plaintiff, by cross-appeal, complains of the allowance of the $924.41 for 1908 tow destroyed by fire.

1.  A disputed question with reference to the first of these two matters was whether or not the contract of 1905 referred to in our former opinion, was continued in force by agreement of the parties for the year of 1910, but we are sure we would not be justified upon the proof in disturbing the findings of the court and master that it was so extended, as is practically conceded by both parties, so this fact must be accepted as established. Based upon this conclusion is plaintiff's argument that since the contract obligated the defendant to provide storage in consideration of the stipulated commission on each ton of hemp handled, he cannot under the contract claim storage or expense incident thereto, but was entitled to commission only for which he did not sue, and it seems that the commissioner, upon this theory alone, refused the claim for $1,125.00 for storage of the 1910 hemp salvaged from the fire of April 6, 1910, until the expiration of the contract on December 19, 1910, for he says in his report "the commissioner has omitted from the expense on salvaged hemp to December 19, 1910, the item of storage,

nine months at $1.25, $1.125.00, as shown on first page of defendant's exhibit No. 27, for the reason that under the contract the defendant was not entitled to charge storage during the existence of the contract.''

It is quite true that the commission provided for in the contract covered compensation to defendant for the use of his warehouse in Winchester for storage of 1910 hemp, but defendant was not obligated thereby to furnish storage in any event, for by the contract he only leased to the plaintiff his warehouse in Winchester for storage and handling purposes. The contract between the parties, in its essential features, made the defendant the agent of the plaintiff, not only in the purchase of hemp and tow, but also in handling and caring for it, and when the warehouse, which plaintiff had leased for the purpose and in which its hemp and tow were stored, was destroyed by fire for which defendant was in no wise responsible, it became his duty as agent for the company, to look after and take care of the hemp and tow salvaged from the destroyed warehouse, but certainly not at his own expense even though the contract provided ''he shall himself pay all of the expenses of the business so conducted by him as such agent,'' as this plainly means the expenses of conducting the business in the warehouse plaintiff leased for the purpose and not in providing a new place for the business when the one furnished by the company was destroyed by fire, an unavoidable and unforeseen casualty not within the contemplation of the parties when the contract was made. By the very terms of the contract the burden of furnishing a place in which the business of the plaintiff was to be conducted by defendant as its agent was acknowledged and assumed by the plaintiff. Whether or not he might also have recovered the commissions due him under the terms of the contract we need not decide, as he has made no claim therefor, but certainly under such circumstances he was entitled to be reimbursed for such unforeseen and extraordinary expenses as he necessarily incurred in caring for and storing plaintiff's hemp and tow after the place provided by it for storage had been destroyed by fire.

It is therefore apparent that the reason assigned by the commissioner, and presumably accepted by the court, for the disallowance of the claim for storage from the time the warehouse was destroyed by fire in April to the

expiration of the contract in December, a period of nine months, is not a good one. Proof of the destruction by fire of the warehouse which plaintiff had provided for the purpose is sufficient proof of the necessity of providing storage for it, and at its expense, of the salvaged hemp and tow, but as to the value of this storage furnished by the defendant, the proof is conflicting, and as we think the proof justified the master's conclusion that the storage, after the expiration of the 1910 contract and until the salvaged hemp and tow were sold, was worth fifty cents per ton per month, we think this rate should have been allowed as well for storage for the nine months just before the contract expired. The number of pounds of 1910 hemp and tow that was salvaged is fixed by the commissioner's report at approximately 92 tons, of which about 14 tons were sold during the year 1910, leaving on hand about 78 tons on December 19, 1910. So, accepting these figures as correct and taking one-half of the sum of what was salvaged and what was on hand at the expiration of the 1910 contract, we have 85 tons as the average amount on hand during the nine months, which at fifty cents a ton per month for the nine months makes $382.50 that should have been allowed to the defendant for storage of the salvaged 1910 hemp and tow from the time of the fire until the expiration of the contract.

Counsel for plaintiff, however, insist most earnestly the chancellor's decision of this question ought not be disturbed under the familiar rule that where upon a question of fact the proof is so conflicting as to leave the mind in doubt his decision will be accepted, but here that rule does not apply, since, as we have seen, the error is one of law as to liability under the contract upon facts about which there is practically no doubt on the testimony and accepting the master's report, as was evidently done by the chancellor, upon the facts we are forced to a different conclusion as to liability.

2.  Appellant claimed $1,500.00 for expenses in hauling the salvaged 1910 hemp and tow from the burned warehouse to the barns in the country in which he stored it after the fire. The proof shows that with the intention of making a charge for this expense he kept an itemized account of such expenses and this he produced in his evidence, showing an expense of $962.90, which the master allowed him. He testified, however, that in addition to

the $962.90 shown by his itemized expense account, he had expended at least $537.10, the balance of the $1,500.00 claimed, but he was unable to exhibit an itemized or any detailed statement of this part of the expenses claimed, and although he testified positively that he had expended this sum or more for hauling in addition to the $962.90, in which he was in a way corroborated by the witness Ramsey, who, however, plainly had no positive knowledge of the matter, we do not think the master erred in refusing upon such testimony to allow the $537.10, as where with reference to a particular matter the party claiming thereunder has kept an itemized account of his expenses for the very purpose of making a charge therefor, he ought to abide by the account he has kept, and not be permitted long thereafter to add a gross sum thereto upon his mere statement that he knows he has expended that much or more in addition to the account kept by him at the time. The $150.00 allowed in the original opinion upon practically the same kind of evidence for telegraph and telephone expenses was allowed for a very different reason and under very different circumstances. The failure to keep an itemized account of those expenses was excused under peculiar circumstances upon the ground that at the time the expenses were incurred defendant was unaware of his right to make claim therefor. With reference, however, to the expense now under consideration, defendant knew all the time of his right to claim therefor and for the purpose of asserting such claim kept an itemized account of his expenses, so there is no such similarity of conditions as would justify, much less demand, the application of the same rule of evidence in both cases; and it is we are sure only where some very satisfactory explanation is given for the failure to keep an itemized account of the expenses for which reimbursement is demanded that the claimant should ever be allowed to sustain his claim by evidence that he knows at least a certain gross sum was expended by him.

3. Upon the cross-appeal plaintiff complains of the allowance of $924.41 to the defendant as the value of 1908 tow destroyed, and for which he had theretofore been charged, upon the ground that the defendant instead of being allowed to charge himself only with the value of the salvaged tow, as fixed by an appraisement made soon after the fire, should have been charged with the full value

thereof, since he has claimed and been allowed for expenses in handling and storing this tow in connection with the salvaged hemp, from the time of the fire until the expiration of the 1910 contract and perhaps longer, and especially as defendant, although asked to do so, persistently refused to give information as to when and for what the salvaged tow was sold by him.

One trouble at least with this seemingly plausible argument is that the claim of and allowance to defendant for storage was confined to the 1910 crop of hemp and does not include the salvaged 1908 tow; and while it is true defendant, although asked to do so, did not furnish a statement of what he received for this salvaged 1908 tow, it is also true that he did not do so because after its appraisement he commingled and sold it with other tow and it would have been quite difficult, if not impossible, for him to furnish the information desired.

We are therefore of the opinion that in charging him with the appraised value, not shown to be incorrect, and in the absence of other proof of its value, of the salvaged 1908 tow, the master adopted the most satisfactory and only just plan provided by the evidence, and that we ought not to disturb the chancellor's judgment approving same.

It is also urged against this allowance that this 1908 tow had been paid for by plaintiff and defendant received the insurance thereon, which is quite true, but defendant had been charged both with the value of the tow and the whole of the insurance he received; and since it was destroyed without his fault he was properly credited with $1,042.59, the value thereof, less $104.25 and $13.93 already allowed him on this claim, or the net credit of $924.41 as allowed by the judgment.

4. Appellant also complains of the manner in which his subsequently allowed items were credited in the second judgment, claiming interest upon interest, amounting to $192.00, has been charged to him in the last judgment, and this is true, the result of having attempted to tack the second judgment on the one first entered. The first judgment for plaintiff, affirmed in part and reversed in part on the former appeal, as stated in the opinion was for $6,854.40 with interest and costs, but as a matter of fact the judgment entered was for $8,402.35, which included interest on the $6,854.40 from the date the suit was filed to the date the judgment was entered, and which

would have been proper under section 2220 Kentucky Statutes, had the judgment been correct as to the net amount due plaintiff on a final settlement, but as that amount had been incorrectly adjudged, the judgment for the one ultimate sum, including accrued interest, was necessarily reversed in its entirety, and should have been entirely disregarded upon a return of the case, instead of being used as a period of rest, in calculating interest. The former opinion gave no validity to that judgment except as to items included to be used as a basis for one correct final judgment; i. e., defendant was correctly charged with $6,854.40, but entitled to credits for $150.00 and $165.00, and whatever sums, if any, should be found to be due him on the two items remanded for hearing upon a reference to the master. As, upon these two items, we have determined he should have been allowed $382.50 for storage from the date of the fire until the expiration of the 1910 contract, in addition to the $924.41 for 1908 tow destroyed by the fire, the judgment to be entered upon the return of the case will be for $6,854.40, less $150.00, $165.00, $924.41 and $382.50, with accrued interest upon the net amount, calculated straight through without rests from October 3, 1912, the date the suit was filed, to the date the judgment is rendered, with interest thereafter upon this ascertained sum, and costs.

5.   It is finally insisted by appellant that the court erred in adjudging against him the costs of the reference to the master, because of the fact that on one of the items referred, he recovered a substantial sum, but this contention is manifestly unsound, since this is but a single action in which plaintiff has the only judgment carrying costs with it, and there is no more reason for cutting this one action into parts in adjudging costs for defendant than there would be in calculating interest for plaintiff simply because several hearings have been necessary to a final adjudication of the matters involved.

Wherefore the judgment is reversed upon the direct and affirmed on the cross appeal, with directions to enter a judgment as herein indicated.